# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL GOODALE, <br><br> Defendant. | No. 12-CR-3011-LRR <br><br> **ORDER** |

_____

## I. INTRODUCTION

The matter before the court is Defendant Michael Goodale's Objections (docket no. 31) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 28), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 16).

## II. RELEVANT PROCEDURAL HISTORY

On March 7, 2012, the government filed a five-count Indictment (docket no. 2) against Defendant. Counts 1 and 2 of the Indictment charge Defendant with knowingly crossing a state line with the intent to engage in a sexual act with a person under the age of twelve years. Such offense is a violation of 18 U.S.C. § 2241(c). Counts 3 and 4 of the Indictment charge Defendant with knowingly transporting a person who had not attained the age of eighteen years across a state line with the intent that such person engage in criminal sexual activity. Such offense is a violation of 18 U.S.C. § 2423(a). Finally, Count 5 of the Indictment charges Defendant with knowingly accessing with intent to view visual depictions of minors engaged in sexually explicit conduct. Such offense is a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).

On March 25, 2012, Defendant filed the Motion. On April 1, 2012, Defendant filed an Amendment (docket no. 20) to the Motion. On April 2, 2012, the government filed a

Resistance (docket no. 22). On April 3, 2012, Judge Scoles held a hearing on the Motion. Defendant appeared in court with his attorney, Mark R. Brown. Assistant United States Attorney Mark A. Tremmel represented the government. On April 19, 2012, Judge Scoles issued the Report and Recommendation, which recommends that the court deny the Motion. On April 27, 2012, Defendant filed his Objections. The Objections and Report and Recommendation are fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. ANALYSIS

Defendant objects to Judge Scoles's finding that Defendant waived his *Miranda*[1] rights prior to making statements to law enforcement. Defendant also objects to Judge Scoles's finding that there was no Fourth Amendment violation concerning Defendant's laptop computer. Having conducted the required de novo review of the objected-to portions

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

of the Report and Recommendation, the court deems it appropriate to overrule Defendant's Objections and adopt the Report and Recommendation.

### A. *Defendant's Statements to Law Enforcement*

In the Motion, Defendant contends that the court should suppress his statements to law enforcement during the September 17, 2011 interview because he did not voluntarily, knowingly and intelligently waive his *Miranda* rights. Defendant also argues that his statements were not voluntary. In the Report and Recommendation, Judge Scoles finds that Defendant was not in custody at the time of the interview, and, consequently, "it was unnecessary for law enforcement to give Defendant a *Miranda* warning." Report and Recommendation at 9. Judge Scoles further finds that Defendant's waiver of his *Miranda* rights was voluntary, knowing and intelligent. In his Objections, Defendant notes that "the relevant facts do not appear to be in much contention." Objections at 4. Defendant contends that, based on the undisputed facts, he was in custody, his waiver of his *Miranda* rights was not knowing, voluntary and intelligent and his statements were not voluntary.

#### 1. *Custody*

Defendant argues that he was in custody because police drove him to the police station in a "marked squad car," law enforcement conducted the interview "in a small interview room with a door lock visible" and one of the officers "seemed to position himself by the doorway exit." *Id.* at 5. Defendant acknowledges that law enforcement told him that he was "not under arrest and that the door [was] open and that he[ was] free to leave the room." Memorandum in Support of Motion (docket no. 16-1) at 4. Despite law enforcement telling him that he was free to leave, however, Defendant contends that he "believed that he was in custody." *Id.* The court finds that Defendant's arguments are unavailing.

"Officers must inform suspects of their *Miranda* rights before subjecting them to custodial interrogations." *United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012). A suspect is in custody if "a reasonable person in his position would consider his freedom

of movement restricted to the degree associated with formal arrest." *United States v. Muhlenbruch*, 634 F.3d 987, 995-96 (8th Cir.) (quoting *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007)) (internal quotation mark omitted), *cert. denied*, 132 S. Ct. 228 (2011). The Eighth Circuit Court of Appeals considers a nonexclusive list of factors when determining whether a suspect is in custody:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Sanchez*, 676 F.3d at 630 (quoting *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). The Eighth Circuit has noted that the first factor "weighs heavily in favor of noncustody when officers clearly inform a suspect that [he] is free to leave or decline questioning." *Id.* at 631 (citing *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (noting that there is "no governing precedent of the Supreme Court or [the Eighth Circuit] . . . hold[ing] that a person was in custody after being clearly advised of his freedom to leave or terminate questioning")).

In *Muhlenbruch*, the Eighth Circuit applied this six-factor test. *Muhlenbruch*, 634 F.3d at 996-97. In that case, the defendant "was confronted by police at his apartment and, without knowing the reason for their presence, he accompanied the officers to the police station for questioning." *Id.* at 996. The defendant rode to the police station in the back seat of a patrol car. *Id.* Once at the station, an officer informed the defendant that he was not under arrest and he was free to leave. *Id.* Two officers proceeded to interview the

4

defendant in a small room with the door closed. *Id.* The Eighth Circuit held that, "[b]ased on the totality of the circumstances," the defendant was not in custody. *Id.* at 997.

In the Report and Recommendation, Judge Scoles applies the six-factor test and concludes that Defendant was not in custody. After conducting a de novo review, the court agrees. The court notes in particular that, as Defendant concedes in his Memorandum in Support of the Motion, law enforcement "expressed to [him] that he[ was] not under arrest and that the door [was] open and that he[ was] free to leave the room." Memorandum in Support of Motion at 4. Thus, the first factor "weighs heavily in favor of noncustody." *Sanchez*, 676 F.3d at 631. The court further notes that this case is factually similar to *Muhlenbruch*—Defendant rode to the police station in a squad car, law enforcement told him he was free to leave and then law enforcement proceeded to interview him in a small room with the door closed. "Based on the totality of the circumstances," the court finds that Defendant was not in custody during the September 17, 2011 interview. *Muhlenbruch*, 634 F.3d at 997. Because Defendant was not in custody, law enforcement officers were not required to give Defendant his *Miranda* warnings, and, consequently, Defendant's argument that he did not voluntarily, knowingly and intelligently waive his *Miranda* rights is without merit.

### 2. Waiver

Even if the court was to find that Defendant was in custody during the September 17, 2011 interview, Defendant's statements to law enforcement would nevertheless be admissible because Defendant knowingly, voluntarily and intelligently waived his *Miranda* rights. In his Objections, Defendant argues that his waiver was not knowing and voluntary because: (1) the interview was very early in the morning; (2) he had consumed alcohol several hours prior to the interview; (3) he has a hearing impairment; (4) the interview room was small and one of the officers positioned himself by the doorway exit; and (5) one of the officers inadequately explained his *Miranda* rights after Defendant read the written *Miranda* waiver form and asked for clarification.

5

"There are 'two distinct dimensions' to the inquiry whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir.) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)), *cert. denied*, 132 S. Ct. 213 (2011). "First, the waiver 'must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* (quoting *Moran*, 475 U.S. at 421); *accord United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007). "Second, the suspect must have waived his rights 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Moran*, 475 U.S. at 421); *accord Phillips*, 506 F.3d at 687.

After conducing a de novo review, the court agrees with Judge Scoles's finding that Defendant knowingly, voluntarily and intelligently waived his *Miranda* rights. The record reflects that Defendant voluntarily accompanied law enforcement to the police station; law enforcement told him that he was free to leave; law enforcement read him his *Miranda* rights; Defendant read the waiver form, and, when he asked for clarification, a law enforcement officer told Defendant that he had the "right to not talk to" the officers, Report and Recommendation at 11 n.8 (quoting Government's Exhibit 1); and Defendant then signed the waiver form. Moreover, Defendant demonstrated that he understood his rights by invoking his right to remain silent approximately ten minutes into the interview. Despite Defendant's assertion that he consumed alcohol several hours prior to the interview, there is no evidence that Defendant was intoxicated at the time of the interview. Finally, the court fails to see why Defendant's hearing impairment would affect the validity of his waiver—Defendant received a written form explaining his *Miranda* rights. Thus, even if Defendant was in custody during the September 17, 2011 interview, his statements are admissible because law enforcement informed Defendant of his *Miranda* rights and he validly waived those rights.

### 3. *Voluntary statement*

Although it is not clear from Defendant's Motion or his Objections, it appears Defendant is also arguing that, even if he was not in custody, the court should suppress his statements because they were involuntary. In so arguing, Defendant points to the same circumstances that he claims rendered his *Miranda* rights waiver invalid. "'A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination.'" *Muhlenbruch*, 634 F.3d at 997-98 (quoting *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)). For the same reasons that Defendant's *Miranda* rights waiver is valid, the court finds that Defendant's statements were voluntary, and, therefore, Defendant's statements to law enforcement are admissible.

## B. *Search and Seizure of Laptop Computer*

In the Motion, Defendant also argues that the court should suppress all evidence related to his laptop computer. Specifically, Defendant contends that: (1) Officer Terrance Prochaska conducted a pre-warrant search of Defendant's laptop in violation of the Fourth Amendment; (2) law enforcement seized the laptop in violation of the Fourth Amendment; and (3) the state search warrant lacked probable cause. In his Amendment to the Motion, Defendant also argues that, if the "[c]ourt finds legal flaws via the State Search Warrant, these flaws must carry over to the federal warrant, for the State Warrant, was indeed the groundwork for the later federal search warrant." Amendment at 1. In the Report and Recommendation, Judge Scoles finds that Officer Prochaska did not violate the Fourth Amendment, law enforcement properly seized Defendant's laptop and probable cause supported both the state and federal search warrants. In his Objections, Defendant states that Judge Scoles "did not misapply the law or misunderstand the facts independently, but clearly misapplied the facts to the law." Objections at 4. Defendant maintains that Officer Prochaska conducted a pre-warrant search of the computer in violation of the Fourth Amendment and "any State Court or Federal Court search warrants related to . . .

7

Defendant's laptop computer . . . had to be obtained upon illegal actions." *Id.* at 3. After conducting a de novo review, the court finds that Defendant's arguments are unavailing.

In his Objections, Defendant fails to acknowledge Judge Scoles's finding that "it is clear that law enforcement did not violate the Fourth Amendment by looking at Defendant's laptop during the interview with M.R., because the governmental intrusion went 'no further than the private search.'" Report and Recommendation at 14 (quoting *United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008)). Based on its review of the record, the court agrees with Judge Scoles that there was no Fourth Amendment violation. Although Defendant correctly notes that "Officer Prochaska touched, reviewed and with his eyes visually examined" Defendant's laptop, Objections at 2, he does not allege that M.R. and M.R.'s mother were acting as government agents when they conducted the prior search. Nor does Defendant allege that Officer Prochaska's subsequent search exceeded the search already conducted by M.R. and M.R.'s mother. At the hearing, Officer Prochaska testified that, during his brief handling of Defendant's computer, he saw nothing that M.R. had not already shown him. *See* Transcript (docket no. 29) at 10. Based on these facts, the court finds that there was no Fourth Amendment violation. *See Starr*, 533 F.3d at 995 (holding that police officers did not violate the defendant's Fourth Amendment rights because "the officers only viewed material that had already been viewed" during a search by a private citizen); *see also United States v. Shelton*, 418 F. App'x 514, 517 (7th Cir.) ("[W]e note that the police officers did not violate the Fourth Amendment by looking at what the [computer] technician showed them before securing a warrant. . . . As long as police officers do not exceed the scope of the private search, they may view or replicate the results of that search without violating the Fourth Amendment."), *cert. denied*, 132 S. Ct. 301 (2011).

It is unclear from Defendant's Objections whether he is still pursuing his argument that law enforcement violated his Fourth Amendment rights by seizing the laptop pending issuance of a search warrant. In any case, after conducting a de novo review, the court

agrees with Judge Scoles's finding that the seizure was proper under the circumstances. Law enforcement had probable cause to believe that the computer contained evidence of a crime. If law enforcement had returned the computer to Defendant pending issuance of a search warrant, there was a risk that Defendant would destroy the evidence. Accordingly, law enforcement did not violate the Fourth Amendment by seizing Defendant's laptop prior to obtaining a search warrant. *See United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012).

Finally, it is again unclear from Defendant's Objections whether he maintains that the state and federal search warrants lacked probable cause. In any case, after conducting a de novo review, the court agrees with Judge Scoles that probable cause supported both search warrants. Insofar as Defendant notes that law enforcement failed to include the fact that Officer Prochaska briefly handled and viewed content on Defendant's laptop computer in the state search warrant application, the court finds that such information does not negate probable cause.

## V. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED**:

(1) The Objections (docket no. 31) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 28) is **ADOPTED**; and

(3) The Motion (docket no. 16) is **DENIED**.

**DATED** this 31st day of May, 2012.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA